## BUCKINGHAM TOOL CORPORATION *v.* EVANS

1. Motions—Involuntary Dismissal—Sufficiency of Evidence.

　　A trial judge, in considering a motion for an involuntary dismissal, can dispose of the case on the merits by weighing and determining the facts as well as considering the sufficiency of the evidence as a matter of law; the trial judge's decision will not normally be overturned on appeal unless the evidence clearly preponderates in the other direction (GCR 1963, 504.2).

2. Contracts—Noncompetition Agreement—Violation.

　　A noncompetition agreement is violated where a person sets up a competing business in the name of another as a guise to do business for himself.

3. Contracts—Noncompetition Agreement—Violation—Lending Money.

　　A noncompetition agreement is not normally violated when one party to the agreement lends money, extends credit, or the like to a third person about to engage in a competing business.

4. Contracts—Noncompetition Agreement—Violation—Leasing Building.

　　Defendant had not breached a noncompetition agreement by leasing a newly-built shop to his son, who engaged in competition with the father's former business, or by guaranteeing the lease for equipment where the defendant did not participate in running the business, had no financial interest in the business, and did not counsel his son as to business matters.

---

References for Points in Headnotes

[1] 4 Am Jur 2d, Appeal and Error §§ 105–108.
　24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§.69–71.
[2–4] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 565–580.

Appeal from Wayne, John B. Swainson, J. Submitted Division 1 May 6, 1971, at Detroit. (Docket No. 8008.) Decided July 23, 1971.

Complaint by Buckingham Tool Corporation against Joseph Evans, Mary Evans, Robert Evans, Ann Christine Evans, and Evans Corporation for breach of a noncompetition agreement, for breach of fiduciary duties by Robert Evans, and for conspiracy to breach the noncompetition agreement. Judgment for defendants. Plaintiff appeals. Affirmed.

*Haig Avedisian,* for plaintiff.

*Lewis Daniels,* for defendants.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and T. M. BURNS, JJ.

V. J. BRENNAN, P. J. From a dismissal of plaintiff's suit to recover damages for breach of a noncompetition agreement and from a denial of a motion for new trial, plaintiff appeals.

The principal defendant in this suit, Joseph Evans, owned the Evans Tool and Die Co. ("Evans Co.") along with his wife, Mary, his son, Robert, and his daughter, Dorothy Rankin. In late 1961, Joseph Evans became desirous of getting his money out of the business and retiring. His son Robert, however, wished to continue the business. In order to accomplish both purposes, it was decided that Evans Co. would redeem all of its outstanding stock except that belonging to Robert Evans. In return for his stock, the Evans Co. executed promissory notes to Joseph Evans. As added insurance that the notes would be paid, Joseph Evans insisted that

Evans Co. merge with Buckingham Tool Co. ("Buckingham") which was owned by a longtime friend of the family, Charles Thornell. Mr. Thornell was agreeable to the merger, and he and Robert Evans each became half owners of the Evans-Buckingham Inc. ("Evans-Buckingham"). Evans-Buckingham assumed payment of the promissory notes held by Joseph Evans.

As part of this same series of transactions, Joseph Evans signed a noncompetition agreement on January 2, 1962, which provided:

"Joseph Evans agrees that for a period of five (5) years from date hereof he will not, directly or indirectly, either as a principal, agent, stockholder or in any other capacity, engage in or have a financial interest in any business which is competitive to the business of the Corporation, its successor or its assignee, located within a radius of one hundred (100) miles from the present location of said corporation * * * ."

In mid-1964, difficulties arose between Thornell and Robert Evans which resulted in the dissolution of Evans-Buckingham. Mr. Thornell bought Robert Evans' interest and formed the Buckingham Tool Corp., which is the present plaintiff.

Just prior to the dissolution of Evans-Buckingham, Robert Evans placed orders in his own name for boring mill machines. He also requested his father to construct a building for him to lease in which he could set up a tool shop. His father agreed.

In 1965, Robert Evans leased the newly-built shop from his father and began another tool and die business. Joseph Evans signed as a guarantor on the lease of the four boring mills in the new shop and Mary Evans loaned $100,000 to her son to get him started. The employees of the new shop were for the most part former employees of Evans Tool

and Die Co. and Evans-Buckingham Inc. They testified that they had left Evans-Buckingham because of their friendship with Joseph Evans and the Evans family although Joseph Evans did not solicit them.

In December of 1967, plaintiff commenced this action on three counts: (1) breach of the noncompetition agreement by Joseph Evans; (2) breach of fiduciary duties by Robert Evans in forming a new corporation and stealing employees and accounts; and (3) a conspiracy of all the named defendants to bring about a breach of the noncompetition agreement. With respect to the second and third counts, the court apparently felt, and we agree, that there had been no evidence presented which would support them. With respect to the first count, the court said that the noncompetition agreement was valid, but that the actions of Joseph Evans did not constitute a breach thereof. At the conclusion of plaintiff's proofs, the court, on its own motion, granted an involuntary dismissal as to all counts.

When a trial judge considers a motion for an involuntary dismissal after the close of the plaintiff's proofs, rule 504.2[1] allows him to dispose of the case *on the merits* by weighing and determining the facts as well as considering the sufficiency of the evidence as a matter of law. *Mutual Benefit Life Ins. Co.* v. *Abbott* (1968), 9 Mich App 547; *Bach* v. *Friden Calculating Machine Co.* (CA 6, 1945), 148 F2d 407. Furthermore, the trial court's determination of the facts will not normally be overturned by this Court unless the evidence clearly preponderates in the other direction. *Bradshaw* v. *Blaine* (1965), 1 Mich App 50.

It is well settled that a noncompetition agreement is violated where one sets up a competing business in the name of another as a guise to do business

---

[1] GCR 1963, 504.2.

for himself. *Up River Ice Co.* v. *Denler* (1897), 114
Mich 296. On the other hand, it is not normally a
violation of such agreement to merely lend money,
extend credit, or the like to a person about to en-
gage in a competing business. See 93 ALR 121,
§ 6, p 139. Thus, the lower court was faced with
the task of deciding whether the actions of Joseph
Evans amounted to engaging in a competing busi-
ness through his son, or whether they were merely
a fatherly attempt to help his son get started in a
new business. In deciding that the latter was the
case, we cannot say that the court was clearly er-
roneous. Even though Joseph Evans did rent the
shop to his son as well as guarantee the lease of the
boring mills therein, the great weight of the evi-
dence indicated that he neither participated in the
running of the business nor had a financial interest
in it. See *C. H. Barrett Co.* v. *Ainsworth* (1909),
156 Mich 351. Furthermore, there was no evidence
that Joseph Evans was counseling his son as to
business matters. In light of these facts, we do
not feel that the evidence presented by the plaintiff
justifies the conclusion that Joseph Evans was in-
directly competing in the tool and die business.

For the foregoing reasons, the judgment of the
circuit court is affirmed.

Affirmed. Costs to appellees.

All concurred.