MAYNARD v DORNER

Opinion of the Court

1. Appeal and Error—Nonjury Cases—Findings of Fact—Conclusions of Law.

Remand to the trial court for proper findings of fact and conclusions of law is ordered where there were contested issues of fact not resolved by the trial court's opinion and no conclusions of law were contained in the trial courts opinion, and where these are necessary for a proper review of the nonjury case.

Dissent by J. H. Gillis, P. J.

2. Appeal and Error—Nonjury Cases—Findings of Fact.

The Court of Appeals will not substitute its judgment in a nonjury case for that of the trial judge unless the facts clearly indicate an opposite result must be reached (GCR 1963, 517.1).

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted Division 2 April 11, 1974, at Detroit. (Docket No. 17300.) Decided May 30, 1974.

Complaint by Gilbert Maynard against Charles R. Dorner and Bonnie Dorner, doing business as Dorner Products, Dorner Laboratories, Liquid First Class Auto Polish Co., Liquid Glass Auto Polish Co., Glass Wax Company, and against Bonnie Dorner, Guardian of C. R. Dorner, mentally incompetent, for damages resulting from breach of contract and conversion. Judgment for plaintiff.

References for Points in Headnotes

[1, 2] 5 Am Jur 2d, Appeal and Error § 822.

Advantage which the original trier of facts enjoyed over reviewing court from opportunity of seeing and hearing witnesses, 111 ALR 742.

Defendant Bonnie Dorner appeals. Remanded with instructions.

*Edward Sanders,* for plaintiff.

*Garvey, Kreis & Silverman,* for defendant Bonnie Dorner.

Before: GILLIS, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. This appeal follows a judgment rendered in favor of plaintiff and against Bonnie Dorner as guardian of Charles R. Dorner, mentally incompetent, and Bonnie Dorner, individually.

Defendant Bonnie Dorner, individually, has appealed and has set forth in her brief the following claimed facts. The plaintiff, Gilbert Maynard, was a jobber for auto polish sold by Charles R. Dorner, doing business as (d/b/a) Dorner Products, Dorner Laboratories, Liquid First Class Auto Polish Company, Liquid Glass Auto Polish Company, and Glass Wax Company. The various names of the companies were changed from time to time. Plaintiff started out as a small salesman in the business, but worked his way up to the point where he would be considered a distributor of the product.

The primary claim in this particular case, however, arises out of a transaction that commenced on or about July 7, 1965, when the plaintiff placed an order with the defendant, Charles R. Dorner, for 728 cases of auto polish. On that date, the plaintiff placed an order for that amount of polish and enclosed with his letter a certified money order for $7,150 which he claimed represented payment for that amount of polish, along with certain bonus sheets that allegedly entitled plain-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tiff to additional cases of polish. As a result of the order, a disagreement came about between the plaintiff and Charles R. Dorner as to exactly what the plaintiff was entitled to with respect to this particular order. There had been hard feelings that had been created on earlier dates between the plaintiff and defendant Dorner. In any event, the order was not delivered until September 3, 1965, and there was a question as to whether or not it was completely filled. It was refused by the plaintiff.

Because Mr. Dorner did not immediately fill the order, but cashed plaintiff's check and because plaintiff was unhappy with what was shipped, plaintiff commenced suit in Calhoun County against Charles R. Dorner, also known as (a/k/a) C. R. Dorner, a/k/a Dr. C. R. Dorner, and Bonnie Dorner, d/b/a Dorner Products, Dorner Laboratories, Liquid First Class Auto Polish Company, Liquid Glass Auto Polish Company, and Glass Wax Company. While that suit was pending in Calhoun County, Charles R. Dorner was declared mentally incompetent and committed as mentally ill to the Kalamazoo State Hospital. Bonnie Dorner, his wife, was appointed guardian of Charles R. Dorner. That suit was dismissed for lack of progress.

After the dismissal by the court in Calhoun County, this suit was commenced in Wayne County against Charles R. Dorner, a/k/a C. R. Dorner, a/k/a Dr. C. R. Dorner, and Bonnie Dorner, d/b/a Dorner Products, Dorner Laboratories, Liquid First Class Auto Polish Company, Liquid Glass Auto Polish Company, Glass Wax Company, and Bonnie Dorner, guardian of C. R. Dorner, mentally incompetent, jointly and severally, praying for damages in the amount of $64,990.10.

Because Charles R. Dorner was still under the

impairments stated, he did not appear at time of trial, and the witnesses that gave testimony were the plaintiff, Gilbert Maynard, Charles Sevrans, Fred W. Shields, and defendant Bonnie Dorner. Mr. Sevrans, Mr. Shields, and the plaintiff, Mr. Maynard, all testified that they had, over a period of time, purchased the auto polish from Charles R. Dorner doing business as the various companies set forth in the complaint. They each testified as to the actual mechanics of the sales promotion, the commissions earned, and the promotional incentive that were awarded various sales persons. Not one of these three witnesses, however, indicated that they had ever done business with the defendant Bonnie Dorner, that they had any reason to believe that Bonnie Dorner had any official capacity in relation to the business, nor that they were dealing with anyone other than Charles R. Dorner in their relationship in this business.

Plaintiff introduced two exhibits that contained the name of Bonnie Dorner, along with letterhead bearing her caricature, an advertising brochure which contained her picture, and a magazine article that carried a story indicating that Charles Dorner and Bonnie Dorner were a successful husband and wife team. There was no testimony from either Maynard, Sevrans, or Shields that at any time had they relied upon any of these particular items believing that Mrs. Dorner was involved in the business.

Mrs. Dorner testified that she was aware of the fact that her husband had purchased a rubber stamp which was used to stamp material that was sent out of his office indicating that she was the circulation manager. She indicated, however, that Mr. Dorner had done this with other family member names and had put his father's name down on

some documentation as a shipping manager, even though Mr. Dorner's father actually was a retired minister. She further stated that she had objected to the use of this stamp, and had on occasions hidden the stamp from her husband, but he continued to use the stamp. When he could not find it, there had been some violent episodes when she was forced to return the stamp to him. Mrs. Dorner further indicated that she was aware of the magazine article, but had not been interviewed; and that the first time she was aware of the article was when it had been in print. She also was aware of the fact that this article had been used in an advertising brochure, but asserted that she had played no part in the business until sometime in 1968 after her husband had been committed to the state hospital. Mrs. Dorner and other family members had more or less agreed between themselves that they would try to continue the business on a very limited scale feeling that it would help in the eventual rehabilitation of Mr. Dorner.

It was her claim that she played no part in the transaction upon which this suit was founded; and other than the advertising material and the stamped name, she did not have any connection with the business whatsoever, except after 1968; that none of the three businessmen who testified indicated that they had relied upon the stamp with Mrs. Dorner's name imprinted thereon, any printed material carrying her name, those items that carried her photograph, or the article that had been written about her husband and herself; that all of the testimony, and specifically the testimony of plaintiff, concerned itself with the business relationship with Charles R. Dorner and his various companies.

The plaintiff-appellee claims that both Charles

R. Dorner and Bonnie Dorner acted together in the assumed named businesses, Dorner Products, Dorner Laboratories, Liquid First Class Auto Polish Company, Liquid Glass Auto Polish Company, Glass Wax Company. Further, that they used a pyramid-type promotion scheme in selling the product. Plaintiff claims that he carried on extended business dealings with the defendants for several years previous to the order in question. The plaintiff sent a certified check for $7,150 to defendants for an order of the product. The check was cashed and the order was not filled for a period of nearly two months. When the shipment was delivered it was not in accord with the order and he refused it. Therefore, plaintiff claims that Bonnie Dorner was in business with her husband and plaintiff was entitled to a judgment against both her husband and her individually.

The trial judge after hearing the testimony, rendered an opinion which in pertinent part reads as follows:

"It is the finding of this court that the defendants have converted to their own use monies of the plaintiff in the sum of $7,150 sent them on July 7, 1965 with an order for 728 cases of Liquid 1st Class Auto Polish, which polish was not received by plaintiff.

"Further, that there is due plaintiff under defendants' sales program the following:

"(1) A commission of $1,878.

"(2) Freight charges in the sum of $138.32.

"(3) Refund of check erroneously cashed by defendants in the sum of $479.76.

"The claims of plaintiff for $5,169.60 for 359 replacement cases at $14.40 per case, and for $20,000 alleged loss of business have not been substantiated by the proofs offered and are not allowed.

"Also, it is the finding of this court that there was a holding out to the general public that the businesses

operated by defendants were in fact operated by both of them as a highly successful husband and wife team.

"Accordingly, plaintiff may have judgment against CHARLES R. DORNER, a/k/a C. R. DORNER, a/k/a DR. C. R. DORNER and BONNIE DORNER d/b/a/ DORNER PRODUCTS, DORNER LABORATORIES, LIQUID 1ST CLASS AUTO POLISH CO., LIQUID GLASS AUTO POLISH CO., GLASS WAX COMPANY and BONNIE DORNER, GUARDIAN of C. R. DORNER, M.I., Jointly and Severally, in the sum of $9,646.08 plus interest computed as being $2,740.82, costs and attorney fees."

In considering this appeal we find it necessary for a proper review and determination of the matter to remand to the trial court for proper findings of fact and conclusions of law. This is the requirement of GCR 1963, 517.1 which reads in pertinent part as follows:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. It will be sufficient if the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over elaboration of detail or particularization of facts."

There were contested issues of fact not resolved by the opinion, *viz.:* plaintiff claimed that defendants conducted assumed name businesses; Mrs. Bonnie Dorner denied she had any interest in any of the businesses, nor was she an owner therein. She further asserted that the testimony of plaintiff and his witnesses failed to show any business with her or reliance on any claimed assertion that she was a part of the businesses. The business relationship, if any, between Mr. and Mrs. Dorner is a question of fact which was not determined.

There were also no conclusions of law contained

in the opinion and these are necessary for a proper review and determination of this case by the Court.

On remand the Honorable Harry J. Dingeman, Jr., Circuit Judge, shall reexamine the original record and will prepare and certify to this Court, within 60 days, such new findings of fact, together with conclusions of law as were at the conclusion of the nonjury trial called for by GCR 1963, 517.1. *Dauer v Zabel,* 381 Mich 555; 164 NW2d 1 (1969).

Costs to abide final result.

VAN VALKENBURG, J., concurred.

J. H. GILLIS, P. J., *(dissenting).* I do not agree with my colleagues. The lower court opinion does resolve the essential contested factual and legal issues with "brief, definite and pertinent findings and conclusions". GCR 1963, 517.1. The Dorners' relationship is immaterial since, as the evidence clearly shows, defendants held themselves out to the public as operating a business, an act to which Mrs. Dorner consented. A joint and several judgment is not improper in these circumstances. We do not substitute our judgment in a nonjury case unless the facts show an opposite result must be reached. *Leidig v Rockwood & Co,* 48 Mich App 248; 210 NW2d 257 (1973).

I vote to affirm the trial court.